————o————

5579.

(Court of Appeal, Parish of Orleans.)

## CENTRAL GLASS COMPANY, LIMITED vs. NIAGARA FIRE INSURANCE COMPANY, OF THE CITY OF NEW YORK.

Appeal from the Civil District Court, Division "E."

Lazarus, Michel & Lazarus, for plaintiff and appellee.

Caffery, Quintero, Gidiere & Brumby, for defendant and appellant.

C. C. Luzenburg, attorney.

## CERTIFIED TO SUPREME COURT.

To the Honorable the Chief Justice and Associate Justices of the Supreme Court of the State of Louisiana:

. Pursuant to Article 101 of the Constitution, we desire to certify to your Honors questions of law arising in this case for your instructions as to the proper decision to be made.

## STATEMENT.

On July 16th, 1908, the Niagara Fire Insurance Company of New York, issued its policy of fire insurance covering the furniture, fixtures and machinery of the Central Glass Company, Limited, of New Orleans. The policy was of New York standard form. and was issued at New Orleans, and countersigned by the Ferd Marks Insurance Agency, Limited, the representative of the Niagara Fire Insurance Company in New Orleans.

On August 30th, 1908, the premises of the Central Glass Company, Limited, were destroyed by fire and the entire contents of same consumed. The assured furnished the insurance company with proofs of loss in due form, but the insurance company refused to recognize the claim on various grounds hereinafter set forth at . large.

Thereafter, on December 30th, 1908, the plaintiff brought this suit in the Civil District Court for the Parish of Orleans, to recover $2000.00, which was the face of the policy, covering the furniture, fixtures and ma-

chinery which was destroyed, and also prayed for twelve per cent, damages on the amount of the loss, and fifteen per cent, as attorney's fees on the amount of the judgment, interest and damages, as provided for in Act 168 of the General Assembly of 1908.

On February 4th, 1909, after its preliminary exceptions had been overruled, defendant filed its answer, denying any liability to the plaintiff, growing out of the contract of insurance, upon two grounds;

First. That the plaintiff had prepared and furnished "respondent * * * proofs of loss, duly signed and sworn to by plaintiff's officers and agents, wherein it was stated, knowingly, falsely and with intent to cheat and defraud your respondent, that the loss suffered by plaintiff by reason of said fire on the property covered by said policy of insurance amounted to the sum of $36,238.18 while in truth and in fact the amount so claimed was, to the knowledge of plaintiff, grossly excessive of the true amount of the loss suffered, and respondent avers and charges that plaintiff herein in preparing and submitting said proofs of loss, designedly sought to recover from respondent more than the amount of the loss actually suffered by reason of said fire," which amounted to an avoidance of the policy under the terms of the same, and,

Second. That two of the officers and stockholders of the plaintiff company had been indicted in the Criminal Court of this Parish, "Charged with having set fire to the building described in the policy" sued on, alleging that inasmuch as the said officers had "intentionally burned, or procured to be burned, the machinery and furniture and fixtures decribed in the policy," that plaintiff was not entitled to recover, the acts therein charged resulting in an annullment of the contract of insurance.

— 371 —

In answer to the claim of the plaintiff for damages and attorney's fees in accordance with Act 168 of 1908, the defendant denied all liability for the same and alleged.

"That Act No. 168 of 1908, was not in existence when the policy aforesaid was issued to plaintiff herein by respondent; that it was not the intention of the Legislature of the State of Louisiana to make said statute operative except upon policies issued after its passage, and that if such was the intention of the Legislature, then said statute is, as to the defendant in this suit, both an ex **post facto** law and a law impairing the obligation of contracts and divesting vested rights and is null and void because in violation of paragraph 1 of Section 10 of Article 1 of the Constitution of the United States, which prohibits a State from passing an ex **post facto law**, or any law impairing the obligation of contracts or divesting vested rights.

"And further answering, as to said Act No. 168, respondent avers that said Act is null and void because in contravention of the Fourteenth Amendment to the Constitution of the United States and in violation of Articles 2, 6, 31, 48 and 166 of the Constitution of the State of Louisiana."

On June 8th, 1909, the defendant filed a supplemental answer in which it re-alleged and re-affirmed all of the allegations of its original answer "save and except the allegations made in said answer in support of the second ground of defense therein namely, that Abraham J. Wolf and J. Julius Lips intentionally burned or procured to be burned, the machinery and furniture and fixtures described in said policy of insurance and claimed by the petition herein to have been damaged and lost. These allegations the defendant now withdraws, by reason of

the result of the criminal trial under indictments heretofore pending against said Abraham J. Wolf and J. Julius Lips, and defendant formally abandons the ground of defense contained in its original answer in the second section thereof." For further answer defendant denied that the "amount of loss claimed had been suffered on said fixtures, furniture and machinery," and alleged further that the "valuation thereof in the proof of loss furnished by plaintiff was grossly excessive to the knowledge of said plaintiff with intention of recovering from respondent more than it was justly entitled to."

On November 17th, 1909, the defendant made a tender to plaintiff of the full amount of the policy, together with interest and costs up to that time. This tender was refused by the plaintiff on the ground that it did not include the damages and attorney's fees to which plaintiff claimed to be entitled in accordance with Act 168 of 1908.

On January 25th, 1911, the case came on for trial and it was submitted on the admission that the tender had been made as alleged, and had been declined. The only evidence introduced was a certified copy of the indictment referred to in defendant's answer, which was offered in evidence by the defendant, with the admission that the accused had been acquitted on March 25th, 1909, the jury bringing in a verdict of not guilty under the directions of the trial Judge. It was further admitted that "if plaintiff in this case is entitled to recover attorney's fees that a reasonable compensation for the services is fifteen per cent, on the amount sued for."

The Judge of the District Court rendered judgment in favor of the plaintiff in the sum of $2,000.00, together with $240.00 as damages, and $300.00 as attorney's fees. An appeal was taken to the Supreme Court, which reversed the judgment insofar as it condemned the defend-

ant to pay damages and attorney's fees.

In the opinion rendered by the Supreme Court it explicitly overruled the decision in the case of **Monteleone vs. Insurance Company, 126 La., 807**, in the following language:

> "All these points were passed on by this Court in the case of **Monteleone vs. Insurance Company.** This Court held that the act did apply to antecedent contracts and did not impair their obligations, as the charges made by it were merely in the remedy for the enforcement of the contract and not in the contract itself, and finally that the allowance of attorney's fees was discretionary. Upon further consideration, we have concluded that the act does impair the obligation of the contract. * * * We conclude that the said act, if applied to policies already extant at the time of its enactment, would be unconstitutional."

Upon an application for a rehearing the attention of the Supreme Court was called to the fact that the only amount in dispute between the plaintiff and the defendant was the amount represented by the damages and attorney's fees, which amounted to less than $2,000.00, and that, therefore, the Supreme Court was without jurisdiction **ratione materiae** to decide the case.

Thereupon, the Supreme Court, in passing on the rehearing, entered the following order:

> "The amount involved being over $500.00 but not over $2,000.00, there is no reason not to transfer the cause, if the parties in interest desire, to the Court of Appeal.
>
> "It is therefore ordered, adjudged and decreed that the appeal is dismissed at appellant's cost.

— 374 —

"It is further ordered, adjudged and decreed if within ten days the appellant files the required affidavit for the transfer of this case to be heard by the Court of Appeal and usual showing is made that the case be transferred to that Court."

The cause has been duly transferred and is submitted to us for adjudication.

The circumstances recited have placed us in a position of peculiar delicacy. The decision of the Supreme Court on the rehearing dismissing the cause for want of jurisdiction **ratione materiae,** operates as a withdrawal of the first opinion. If we now hold that the **Montleone case** is erroneous we shall be overruling a decision of the Supreme Court; if we hold that it is correct, we shall apparently be acting in the teeth of the opinion in this case which, though technically withdrawn and without judicial effect, appears to represent a deliberate and considered change of view by a unanimuos bench and a retraction of the conclusions reached in the **Monteleone case.**

We have therefore reached the conclusion that a request for instructions would be the proper course to pursue under the circumstances.

We submit for answer the following questions:

First. Does Act 168 of 1908, Section 3, apply to losses occurring after the law became operative, under policies of insurance issued before the law became operative.

Second. If section 3 of Act 168 of 1908 does apply to such policies and losses, is said section unconstitutional as impairing the obligation of the following clauses in the contract of insurance:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be

— 375 —

ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company.

"This company shall not be held to have waived any provision or condition of this policy or forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or any examination herein provided for; and the loss not to become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers, which appraisal has been required."

Third. Under the facts stated, does the constitutional question set forth in the foregoing interrogatory (No. 2), property arise where, as in this case, the defendant has denied all liability on its policy of insurance immediately upon the happening of the fire, has been furnished by the insured with proofs of loss in due form to which no exception or objection have been taken, and has made no request for an adjustment or appraisal.